THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT MENWEATHER, Defendant-Appellant.

First District (4th Division)   No. 77-1635

Opinion filed October 12, 1978.

James J. Doherty, Public Defender, of Chicago (Justine I. Knipper, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Robert Menweather, was charged by information with the offense of armed robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) A jury found defendant guilty and the trial court sentenced him to 10 to 15 years in the penitentiary. Defendant appeals his conviction, contending that his sentence of 10 to 15 years is excessive in light of the nature of the offense and his past criminal history.

We affirm.

The State's case consisted primarily of the testimony of two eyewitnesses. The complaining witness, Milton Vega Lopez, testified that on June 13, 1976, he was a clerk in a grocery store, located at 1052 Buena Street in Chicago. A bystander, William Miller, also testified as to what he had observed on this date.

Through the testimony of these two witnesses, it was established that at approximately 4:30 p.m., an automobile carrying four men stopped in front of the grocery store. The defendant and two confederates got out of the 1967 or 1968 Chevrolet, while the fourth member remained in the car. Defendant entered the store first and pointed a revolver at the complaining witness. At this time, defendant was a foot and a half away from the complainant. After defendant demanded that the clerk give him the money, the complaining witness raised his hands and stated, "Take it but don't kill me." At this time, there were also a woman and a small child in the store. Defendant's cohorts then entered the store, circled around the counter to the cash register, and took all the money in this register, all the food stamps on hand and a bag of pennies. The value of the aforementioned items was $500. At this point, defendant's two associates left the premises.

Defendant then ordered the complaining witness to take his pants off and to lie down on the floor. Defendant looked both ways inside the store

and then left. As he walked out, defendant placed the revolver in the waistband of his pants. Defendant then joined the other three men in the waiting automobile and fled from the area.

The bystander, a resident of the neighborhood, had been standing on the street curb outside the store during the commission of this armed robbery. He witnessed the entire incident, from the time the automobile carrying defendant and his three associates had stopped in front of the store until the time defendant left the store and proceeded to drive away. After defendant had left, Miller entered the store, locked the front door and called the police. As he entered, the complaining witness was pulling up his pants.

Chicago Police Officer Raymond Steele and his partner responded to the armed robbery call. These two officers interviewed the complaining witness, Mr. Miller and a Mr. Crespo, the store owner who had arrived during the interim. Officer Steele requested that Mr. Miller accompany them in driving around the area, in hopes of locating defendant's vehicle. This search proved unsuccessful.

On June 21, 1976, Officer John Eshoo of the Chicago Police Department's Area 6 robbery division, interviewed a Miss Sharon Clark regarding this offense. Clark was the woman who had been in the store at the time of the armed robbery. After several conversations with this witness, Officer Eshoo went to defendant's residence and arrested him.

The police then brought Clark, Miller and the complaining witness to the Area 6 police headquarters to view a lineup in which defendant was placed. All three witnesses selected defendant from this lineup.

At the hearing in aggravation and mitigation, the State produced defendant's past criminal history. This history was outlined in copies of records submitted by the Chicago Police Department and by the Federal Bureau of Investigation. Prior to the instant conviction, defendant's most serious offense took place in 1973. This conviction was for the unlawful use of a weapon for which defendant was sentenced to 90 days in the House of Correction, along with being placed on probation for three years. Defendant was thus on probation at the time of committing the instant offense, since probation for the aforesaid conviction was scheduled to expire on July 24, 1977. Defendant's other serious offenses include a conviction in 1970 for indecent solicitation of a child for which he was sentenced to 60 days in the House of Correction and placed on probation for one year. Defendant was also convicted of battery in 1968 and in 1972 and was sentenced to serve 30 days in the House of Correction for each offense. These records also revealed that defendant was convicted of battery and resisting arrest in 1967 and was fined $225. Lastly, defendant was convicted of disorderly conduct in 1969 and was fined $100.

Defendant contends that the present matter fails to demonstrate any aggravating factors in relation to the offense for which he was found guilty and he cites numerous similar cases in which the defendants were sentenced to serve a lesser amount of time for their convictions. Defendant also calls attention to the fact that he had but one felony conviction prior to committing the present offense and he argues that this should be considered a mitigating factor.

However, the case authorities relied upon by defendant were rendered prior to our supreme court's recent decision in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882. In *Perruquet,* the court declared that absent an abuse of discretion, a reviewing court may not alter a sentence. In reaching this decision, the court stated:

> "[T]he trial judge * * * [is] in the best position to observe and evaluate the myriad factors which comprise the sentencing determination. It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we feel that we would have imposed a different sentence had that function been delegated to us." *Perruquet,* at 156.

There is no evidence that the trial court abused its discretion in sentencing defendant. At the time of the present offense, defendant was on probation after having served a 90-day sentence for a previous unlawful use of weapons conviction. Prior to that crime, defendant was convicted for indecent solicitation of a child, battery, resisting arrest, and disorderly conduct. Under such circumstances, we are of the opinion that defendant's sentence of 10 to 15 years is appropriate and proper. In further support of this conclusion, we must point out that there were a female customer and a child present in the store when defendant entered armed with a deadly weapon. It is evident, therefore, that defendant's actions in this case indicate a total disregard for the safety of others.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.